# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**HEIDI C.[1]**,

        Plaintiff,

   v.

**ANDREW M. SAUL,** Commissioner
of Social Security,

        Defendant.

Case No. 3:18-cv-1224-SI

**OPINION AND ORDER**

Bruce W. Brewer, PO Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204;
Martha A. Boden, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL,
Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104.
Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Heidi C. brings this action pursuant to section 205(g) of the Social Security Act

("the Act"), *as amended*, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. When applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act. For the following reasons, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for disability insurance benefits ("DIB") in 2014, alleging a disability onset date of January 4, 2014. AR 29. Plaintiff's claim was denied initially on July 22, 2014 and upon reconsideration on March 9, 2015. *Id.* Plaintiff then requested a hearing, which was held before an administrative law judge ("ALJ") on March 3, 2017. *Id.* On April 25, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. AR 41. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied the request for review, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). AR 1. Plaintiff was born on February 13, 1965, making her 48 years old at the date of alleged disability onset. AR 85.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one of the sequential analysis, the ALJ found that Plaintiff met the insured status

requirements of the Social Security Act and had not engaged in substantial gainful activity since

the date of alleged disability onset. AR 31. At step two, the ALJ found that Plaintiff suffers from

degenerative disc disease of the cervical and lumbar spine and fibromyalgia. *Id.* At step three, the

ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of

the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 33.

At step four, the ALJ calculated Plaintiff's RFC and found Plaintiff capable of

performing

> light work as defined in 20 CFR 404.1567(b) except the claimant
> could stand and/or walk 2 hours in an 8-hour workday. The
> claimant could no more than occasionally balance, kneel, stoop,
> crouch, crawl and climb ladders, ropes, scaffolds, ramps and stairs.
> The claimant should avoid concentrative exposure to extreme cold.

*Id.* Based on these limitations, the ALJ found that Plaintiff could not perform past relevant work. AR 39. The ALJ determined, however, that Plaintiff could perform other jobs that exist in significant numbers in the national economy, namely work as a Production Assembler, Electrician Worker, and Garment Sorter. AR 40. As a result, the ALJ found that Plaintiff was not disabled. AR 41.

## DISCUSSION

Plaintiff contends that the ALJ made several legal errors. First, she argues that the ALJ improperly failed to mention the "disabling" opinion of Dr. Lorber and that the ALJ's rejection of Dr. Eder's opinion was unsupported by substantial evidence. She also asserts that the ALJ's credibility determination was flawed because it failed to identify specifically what testimony was not credible and why. Lastly, Plaintiff argues that, according to the DOT classification, the ALJ's RFC calculation precludes employment in the jobs identified at step five and that the VE did not adequately justify such a divergence from the DOT.

### A. Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not

contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286

(noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In

other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d

at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-

examining medical advisor cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec.*

*Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of

non-treating or nonexamining physicians may serve as substantial evidence when the opinions

are consistent with independent clinical findings or other evidence in the record).

The ALJ's decision does not mention Dr. Lorber's opinion. Plaintiff contends that this

failure is error. She also argues that the ALJ's failure to give full weight to Dr. Eder's opinion is

unsupported by substantial evidence.

### 1. Dr. Lorber's Opinion

Dr. Lorber completed several "return to work" forms for Plaintiff in 2012, stating that

Plaintiff was limited to sedentary work and ten pounds of lifting. AR 318, 327, 671, 675. The

most recent of these forms was dated October 23, 2012. AR 318. In that form, Dr. Lorber

indicated that Plaintiff's limitations would extend until October 23, 2013. *Id.* Plaintiff's alleged

disability onset date, however, is January 4, 2014.

Because Dr. Lorber's opinion predated Plaintiff's alleged disability onset date, it was not

reversible error that the ALJ failed expressly to discuss and reject the opinion. First, medical

opinions that predate the alleged onset of disability are of limited relevance. *See Carmickle*, 533 F.3d at 1165; *see also Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989). Furthermore, Dr. Lorber's opinion does not appear to offer any opinions beyond those expressed by Dr. Eder, the state agency consultant. Both doctors opined that Plaintiff was limited to sedentary work and 10 pounds of lifting. The ALJ rejected this view and found Plaintiff was capable of light work, which requires an ability to lift 20 pounds. AR 33. The ALJ explained that Dr. Eder's opinion on these matters did not track the objective medical evidence or Plaintiff's activities of daily living, and the ALJ instead adopted Dr. Lahr's finding that Plaintiff could lift 20 pounds. "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti*, 533 F.3d at 1041-42 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). Because Dr. Lorber's opinion contributed no information about Plaintiff's ability to work that was not also contained in Dr. Eder's rejected opinion and was of only limited relevance because Dr. Lorber's opinion predated the alleged onset date, it was not reversible legal error that the ALJ failed expressly to discuss and reject Dr. Lorber's opinion.

### 2. Dr. Eder's Opinion

The ALJ give little weight to the assessment of Dr. Eder. As explained by the ALJ:

> Her opinion does not square with the overall medical evidence record, including mild imaging findings, mostly unremarkable neuromuscular examinations, the absence of surgical or steroidal injection treatment, routine and conservative treatment modalities and some evidence of symptom amelioration with medication. Her opinion also does not square with the claimant's recreational activities and activities of daily living described above, particularly her walking, canning, cooking and working two days a week after her alleged onset date and attending college courses wherein she received excellent grades and doing work study thereafter.

AR 38. The ALJ rejected Dr. Eder's opinion that Plaintiff was limited to sedentary work and lifting a maximum of ten pounds. AR 81-82. This opinion was contradicted by the opinion of Dr. Lahr, who determined that Plaintiff was able to lift 20 pounds. AR 98. An ALJ may reject a

contradicted medical opinion by providing specific, legitimate reasons for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ can comply with this mandate by providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating the ALJ's interpretation of the evidence and making findings. *Tommasetti*, 533 F.3d at 1041.

The ALJ satisfied the legal requirement for rejecting Dr. Eder's opinion. The ALJ pointed to the inconsistency between Dr. Eder's opinion and an April 2014 x-ray of Plaintiff's lower back that showed only mild to moderate degeneration with no spondylosis or spondylolisthesis. AR 38, 502. The ALJ also pointed to the improvement in Plaintiff's condition after beginning to take Tylenol and Flexeril and beginning physical therapy. Plaintiff took up biking, took long walks at the coast, cooked meals, canned, worked two days a week, and received high grades in her college courses. AR 53, 240, 521, 599, 619. The ALJ provided specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Eder's limitation to lifting ten pounds or less.

## B. Plaintiff's Credibility

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency, and duration of symptoms, the effect of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications, and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but found that Plaintiff's statements about the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ explained that Plaintiff's subjective symptom testimony was undermined by her activities of daily living, by a conservative course of treatment and evidence that her symptoms improved with treatment, and by the objective medical evidence, such as MRIs and X-rays.

### 1. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495

F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the

activities need not be equivalent to full-time work; it is enough that the plaintiff's activities

"contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant,

however, need not be utterly incapacitated to receive disability benefits, and completion of

certain routine activities is insufficient to discount subjective symptom testimony. *See id.*

at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for

benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)

("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*,

260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a

plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

walking for exercise, does not in any way detract from her credibility as to her overall disability.

One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v.*

*Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th

Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations

to be relevant to his or her credibility and noting that "disability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations"). Moreover,

particularly with certain conditions, cycles of improvement may be a common occurrence, and it

is error for an ALJ to pick out a few isolated instances of improvement over a period of months

or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See*

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

     The ALJ pointed to Plaintiff's ability to engage in several activities as evidence that

Plaintiff's subjective symptom testimony was not fully credible. These activities include: helping

her children with homework; preparing dinners; canning; feeding pets; performing household chores; going for walks, drives, and taking public transportation; and pursuing her college education and achieving a high GPA. AR 37. The ALJ concluded that these activities were inconsistent with Plaintiff's testimony alleging debilitating pain. This conclusion was supported by substantial evidence, and contrary to Plaintiff's argument, the cited activities of daily living are not the kind of *de minimis* activities insufficient to undermine a claimant's subjective testimony.

### 2. Conservative Treatment and Effective Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162.

Plaintiff never had surgery on her back, nor did any doctor recommend surgical intervention. AR 35. Plaintiff opted against steroidal injections to treat her pain. The ALJ concluded that this type of treatment was conservative given Plaintiff's allegation of debilitating, disabling pain. Further, Plaintiff's symptoms improved in response to treatment, including physical therapy and the use of anti-inflammatory medication. AR 33-39. "Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, **effectiveness** or adverse side effects of any pain medication, and

relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted) (emphasis added).

### 3. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner will not "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ evaluated the objective medical evidence in the record and found that it undermined Plaintiff's subjective symptom testimony. The ALJ described MRI and X-ray imagining in detail and concluded that they revealed mild and unremarkable impairments. Although Plaintiff is correct both that a lack of supporting objective medical evidence cannot provide a basis for rejecting subjective testimony and that the ALJ is poorly positioned to reach such conclusions about evidence like MRIs and X-rays, the ALJ identified multiple sufficient reasons for rejecting Plaintiff's subjective testimony. Even if the ALJ's analysis of the objective medical evidence was flawed, the ALJ provided other specific and legitimate reasons for rejecting Plaintiff's testimony, including activities of daily living and a conservative course of treatment, which were supported by substantial evidence. Thus, the ALJ's rejection of Plaintiff's testimony was not legal error.

## C.  Vocational Expert's Opinion

Plaintiff argues that the ALJ erred at step five in concluding that Plaintiff could perform light jobs because the ALJ found Plaintiff could stand and walk two hours during an eight-hour day. AR 33. Plaintiff contends the ALJ relied on VE testimony that impermissibly deviated from the contents of the DOT without explanation, because "the full range of light work requires standing or walking, off an on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. Because the VE resolved any apparent conflict between his testimony and the DOT, the ALJ was entitled to rely on the VE's testimony.

It is error for an ALJ to rely on a vocational expert's testimony without obtaining a reasonable explanation for conflicts between a vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") or its companion publication, the Selected Characteristics of Occupations ("SCO"). SSR 00-4p; *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). ALJs, however, must seek an explanation only about conflicts that are "obvious or apparent." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). A conflict is obvious or apparent when the VE's testimony is "at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." *Id.*

At the hearing, the ALJ asked whether an individual of Plaintiff's age, education, and work history, and with the limitations identified in the RFC assessment, would be able to perform any work available in the national economy. AR 62. The VE responded that such a person could perform several light unskilled jobs, including products assembler, electronics worker, and garment sorter. AR 63. Plaintiff's counsel asked if such work would be possible if the hypothetical individual were also limited to two hours of standing or walking, and the VE said it would. AR 64-65.

The VE testified that the DOT did not address such standing limitations but that his testimony derived from "over 30 years experience as a vocational expert, and from resources such as job analyses, and labor market surveys developed by professionals in my industry." AR 63. The ALJ accepted the VE's testimony and relied in it in his opinion finding Plaintiff not disabled. This reliance was reasonable, and the ALJ's finding at step five was supported by substantial evidence and was not legal error.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 7th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge